UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHNNY D. ORUM,

               Plaintiff,

                                         Case No. 1:22-cv-573

v.

                                         Honorable Phillip J. Green

UNKNOWN DWALD, et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis.* (ECF No. 5.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff has also filed a motion for reconsideration (ECF No. 8) of the June 28, 2022, order (ECF No. 5) granting him *in forma pauperis* status and directing him to pay an initial partial filing fee within 28 days.  For the reasons set forth below, the Court will grant that motion to the extent that it will issue a revised order granting *in forma pauperis* status and omitting the directive that the initial partial filing fee be paid within 28 days.

## Discussion

### I.    Pending Motion

In its June 22, 2022, order (ECF No. 5), the Court granted Plaintiff leave to proceed *in forma pauperis* and directed him to pay an initial partial filing fee of $74.84 within 28 days.  Plaintiff now moves for reconsideration of that order, seeking leave to proceed without payment of the initial partial filing fee.  (ECF No. 8, PageID.48.) Plaintiff contends that he is unable to pay $74.84 within 28 days because he has "also been ordered to pay $74.84 in another civil action as a partial filing fee."  (*Id.*)

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment.  *See* Fed. R. Civ. P. 54(b); *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted."  W.D. Mich. LCivR 7.4(a).  Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof."  *Id.*

The initial partial filing fee equals 20 percent of the greater of (a) the average monthly deposits to the prisoner's account; or (b) the average monthly balance in the prisoner's account for the six-month period immediately preceding the filing of the complaint.  *See* 28 U.S.C. § 1915(b)(1).  Plaintiff had an average monthly deposit of $374.21 when he filed his complaint; accordingly, his initial partial filing fee was calculated as $74.84.  (ECF No. 5, PageID.41.)  Plaintiff is responsible for ultimately paying that fee and, therefore, the Court will not completely waive it.  The Court will, however, grant Plaintiff's motion for reconsideration (ECF No. 8) in that it will issue a revised order granting *in forma pauperis* status and omitting the directive that the initial partial filing fee be paid within twenty-eight (28) days.

## II.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Newberry Correctional Facility (NCF) in Newberry, Luce County, Michigan.  The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Warden Randee Rewerts, Deputy Warden Unknown Schiebner, Assistant Deputy Wardens Unknown Niemiec and Unknown Winger, Captain Unknown Dwald, Sergeant Unknown Party #1, Second Shift Command Officer Unknown Party #2, and Librarians R. Loomis and Unknown Hitchingham.

### A.    Relevant Procedural Background

In 2016, Plaintiff filed a complaint in this Court while incarcerated at the Chippewa Correctional Facility (URF), raising various claims for relief, including First Amendment and Religious Land Use and Institutionalized Persons Act

(RLUIPA) claims concerning the denial of a Kosher diet including fish or meat on the Sabbath as required by his Jewish faith.  Compl., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 9, 2016), (ECF No. 1).  In an opinion and order entered on October 28, 2016, Judge Quist screened the complaint and dismissed certain defendants. Op. & Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Oct. 28, 2016), (ECF Nos. 16, 17).  Subsequently, on February 18, 2021, the remaining defendants filed a motion for judgment on the pleadings. Mot., *Orum v. Mich. Dep't of Corr.*, No 2:16-cv-109 (W.D. Mich. Feb. 18, 2021), (ECF No. 198).

In a Report and Recommendation (R&R) entered on April 7, 2021, Magistrate Judge Vermaat recommended granting the motion on the basis that Plaintiff's remaining RLUIPA claims were barred under the doctrine of claim preclusion.  R&R, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 7, 2021), (ECF No. 202).  Specifically, Magistrate Judge Vermaat concluded that such claims were barred based upon the final judgment issued by the Eastern District of Michigan in *Ackerman v. Washington*, No. 4:13-cv-14137. *Id.*, PageID.1373–74.  *Ackerman* was a putative class action brought by Jewish prisoners against the MDOC in which the Eastern District of Michigan directed that the MDOC must provide all class members with Kosher meat and dairy products on Sabbath days, as well as on the Jewish holidays of Rosh Hashanah, Yom Kippur, Sukkot, and Shavuot, and provide cheesecake on Shavuot. *Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1019 (E.D. Mich. 2020), *aff'd*, 16 F.4th 170 (6th Cir. 2021).  Magistrate Judge Vermaat concluded that Plaintiff's claims were barred because, pursuant to *Ackerman*, he now received

6

meat on Sabbath days and during the Jewish holidays noted above.  R&R, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 7, 2021), (ECF No. 202, PageID.1379–83).  On April 27, 2021, Judge Quist adopted the R&R after noting that no objections had been filed.  Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 27, 2021), (ECF No. 206).

The Court received Plaintiff's objections to the R&R on April 29, 2021.  Obj., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Apr. 29, 2021), (ECF No. 207).  In an order entered on May 14, 2021, Judge Quist considered Plaintiff's objections to be timely filed and vacated the prior order adopting the R&R.  Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 14, 2021), (ECF No. 224).  After reviewing Plaintiff's objections, Judge Quist determined that claim preclusion did not fully apply because Plaintiff "could not raise his claim [in *Ackerman*] that his sincerely held religious beliefs require him to eat meat on all other Jewish holidays."  *Id.*, PageID.1623.  Plaintiff could not raise his claim premised upon an individualized belief because it was not common "throughout the *Ackerman* class."  *Id.*, PageID.1624.  Judge Quist, therefore, adopted in part and rejected in part the R&R, and noted that Plaintiff could "proceed to trial on his RLUIPA claim involving meat on the other Jewish holidays that were not addressed in *Ackerman*."  *Id.*, PageID.1625.

The remaining defendants subsequently filed a motion to bifurcate Plaintiff's remaining retaliation claims from his RLUIPA claims.  Mot., *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 20, 2021), (ECF No. 238).  Magistrate Judge

Vermaat granted that motion on May 24, 2021.  Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 24, 2021), (ECF No. 244).  Following a two-day jury trial, the jury returned a verdict in favor of the defendants for Plaintiff's retaliation claims.  Jury Verdict, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. June 8, 2021), (ECF No. 268).  On December 21, 2021, the parties filed a proposed stipulation and order, seeking dismissal of the entire case with prejudice.  Stipulated Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Dec. 21, 2021), (ECF No. 293).  Judge Maloney[2] signed and entered the stipulation and order on December 30, 2021, and the case was terminated.  Stipulated Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. Dec. 30, 2021), (ECF No. 294).

### B.    Summary of Plaintiff's Complaint

In the complaint filed in the instant case, Plaintiff alleges that on April 1, 2021, Defendant Loomis issued a memorandum informing staff and inmates at DRF that the MDOC Director's Office Memorandum (DOM) regarding COVID-19 protocols had been revised to allow facilities to "run law library call outs while under Outbreak Status, with restrictions."  (ECF No. 1, PageID.4.)  Shortly thereafter, Plaintiff submitted a kite to request a law library call out.  (*Id.*)  Plaintiff contends that he met the requirements set forth in the memorandum "by having a[n] active case and needing the electronic law library to object to a recently issued Report and Recommendation in [his] pending civil action." (*Id.*)

---

[2] The case had been reassigned to Judge Maloney pursuant to an administrative order entered on May 27, 2021.  Order, *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich. May 27, 2021), (ECF No. 253).

Plaintiff's call out was scheduled for April 14, 2021, "for 1730hrs to 1830hrs." (*Id.*, PageID.5.)  On that date, Unit Officer Richards (not a party) signed Plaintiff's pass for the call out.  (*Id.*)  When Plaintiff arrived at the school building, where the law library is located, he found that it was locked.  (*Id.*)  Plaintiff returned to his housing unit and spoke to Unit Officer Richards about the issue.  (*Id.*)  Plaintiff's unit was then called for chow, and Plaintiff went to the chow hall to talk to the sergeant about opening the school building.  (*Id.*)

When Plaintiff entered the chow hall, he saw Defendant Unknown Party #1 talking to Defendant Dwald.  (*Id.*)  Plaintiff approached and told them that he had been unable to attend his scheduled law library call out because the school building had been locked.  (*Id.*)  Plaintiff was told that the law library was "closed due to COVID and that no officer had been assigned to the [school building] for that reason." (*Id.*)  Plaintiff responded that the revised DOM allowed for inmates with pending litigation to access the law library after submitting the necessary application form. (*Id.*, PageID.5–6.)  Defendants Unknown Party #1 and Dwald told Plaintiff that they had been told that the law library was closed and that they would investigate the matter.  (*Id.*, PageID.6.)  Plaintiff saw Defendant Unknown Party #1 shortly afterwards and showed him the revised DOM.  (*Id.*)  Despite that, the school building remained closed, and Plaintiff could not access the law library on April 14, 2021.  (*Id.*)

Plaintiff submitted another kite requesting law library access.  (*Id.*)  After several days, Defendants Looms and Hitchingham sent Plaintiff another deadline verification form to submit to be placed on the call out list.  (*Id.*)  Plaintiff submitted

another kite and submitted the required form as proof that he had a pending deadline.  (*Id.*)  On April 19, 2021, Plaintiff filed a grievance regarding his inability to access the law library and the interference with his ability to access the courts.  (*Id.*, PageID.6–7.)

On April 21, 2021, Plaintiff was placed on the law library call out list.  (*Id.*, PageID.7.)  During his law library time, Plaintiff "was able to put together [his] Objection to the [R&R] issued by the Magistrate Judge on April 7, 2021[,] in [his] civil action." (*Id.*)  On April 23, 2021, Plaintiff mailed his objections to this Court for filing.  (*Id.*)  On April 27, 2021, however, Judge Quist issued an order adopting the R&R after noting that no objections had been filed.  (*Id.*)

Thereafter, Plaintiff submitted a kite to Defendants Loomis and Hitchingham, asking to be placed on the law library call out list so that he could prepare a motion to reinstate his dismissed claims.  (*Id.*)  Defendants Loomis and Hitchingham sent Plaintiff another deadline verification form to complete and submit.  (*Id.*)  Plaintiff did so, but avers that Defendants refused to place him on the law library call out list after he filed his grievance concerning his inability to access the law library on April 14, 2021.  (*Id.*, PageID.7–8.)  On May 16, 2021, Plaintiff filed a grievance against Defendants Loomis and Hitchingham for refusing to provide him additional law library time in retaliation for his prior grievance.  (*Id.*, PageID.8.)

Based on the foregoing, Plaintiff asserts First Amendment denial of access to the courts claims against all Defendants, as well as First Amendment retaliation claims against Defendants Loomis and Hitchingham. (*Id.*, PageID.8–10.) He seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.11.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C.
§§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of
a right secured by the federal Constitution or laws and must show that the
deprivation was committed by a person acting under color of state law. *West v. Atkins*,
487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).
Because § 1983 is a method for vindicating federal rights, not a source of substantive
rights itself, the first step in an action under § 1983 is to identify the specific
constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Rewerts, Schiebner, Niemiec, Winger, and Unknown Party #2

As noted *supra*, Plaintiff sues Warden Rewerts, Deputy Warden Schiebner,
Assistant Deputy Wardens Niemiec and Winger, and Second Shift Command Officer
Unknown Party #2. His complaint, however, is completely devoid of any allegations
concerning these individuals. It is a basic pleading essential that a plaintiff attribute
factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding
that, in order to state a claim, a plaintiff must make sufficient allegations to give a
defendant fair notice of the claim). Where a person is named as a defendant without
an allegation of specific conduct, the complaint is subject to dismissal, even under the
liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*,
92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to
allege how any named defendant was involved in the violation of his rights); *Frazier
v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where

the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Plaintiff's claims fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  For that reason alone, his complaint must be dismissed against Defendants Rewerts, Schiebner, Niemiec, Winger, and Unknown Party #2.

Further, it appears that Plaintiff has named these individuals as Defendants because of their respective supervisory capacities.  Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888

13

(6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct.  Indeed, he fails to allege any facts at all about their

14

conduct.   His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Rewerts, Schiebner, Niemiec, Winger, and Unknown Party #2 were personally involved in the events set forth in Plaintiff's complaint.   Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action against these Defendants is premised on nothing more than respondeat superior liability, his action fails to state a claim against Defendants Rewerts, Schiebner, Niemiec, Winger, and Unknown Party #2.

### B.   First Amendment Claims

#### 1.   Access to the Courts

Plaintiff alleges that Defendants impeded his First Amendment right to access the courts by: (1) denying him access to the law library on April 14, 2021; and (2) not scheduling him for additional law library time after filing a grievance concerning the incident on April 14, 2021.  (ECF No. 1, PageID.8–10.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824–25.  The right of access to the courts also prohibits prison officials

15

from erecting barriers that may impede the inmate's access to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.  *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

16

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff does not provide a case number for the underlying action, but he has sufficiently described it in his complaint such that the Court has identified it as his litigation in *Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich.), as set forth above. Plaintiff contends that his inability to access the law library on April 14, 2021, caused his objections to Magistrate Judge Vermaat's R&R regarding the motion for judgment on the pleadings to be untimely and not considered before Judge Quist adopted the R&R. (ECF No. 1, PageID.8.) Plaintiff argues that because of the lack of access, he was unable to argue that his claims regarding the lack of meat and/or fish for other Jewish holidays besides the four considered in the *Ackerman* class action were not precluded based upon the *Ackerman* ruling. (*Id.*, PageID.8–9.)

With respect to Plaintiff's contention regarding his inability to file timely objections, Plaintiff has not set forth an access to the courts claim because he cannot show that he has a lost remedy. Plaintiff's complaint omits relevant procedural history regarding his prior litigation. As thoroughly set forth above, Judge Quist initially adopted Magistrate Judge Vermaat's R&R after noting that no objections

had been filed. The Court then received Plaintiff's objections two days after Judge Quist entered his order. Subsequently, Judge Quist deemed Plaintiff's objections to be timely filed and vacated the prior order adopting the R&R. After considering Plaintiff's objections, Judge Quist **agreed** with Plaintiff that claim preclusion did not fully apply because Plaintiff could not raise his individualized claim regarding the provision of meat on other Jewish holidays in the *Ackerman* class action. Judge Quist, therefore, adopted in part and rejected in part the R&R and noted that Plaintiff could proceed to trial on his RLUIPA claim regarding the provision of meat on other Jewish holidays not addressed in *Ackerman*. As noted *supra*, the parties ultimately entered a stipulation and order that such claims would be dismissed with prejudice. Contrary to Plaintiff's assertion, he was able to file timely objections to the R&R and was successful in having his claims regarding other Jewish holidays reinstated. Plaintiff, therefore, has not sufficiently alleged a lost remedy and cannot maintain an access to the courts claim premised upon his inability to access the law library on April 14, 2021, and an inability to file timely objections to the R&R.

Plaintiff also suggests that Defendants Loomis and Hitchingham impeded his ability to access the courts by not scheduling him for law library time after he filed a grievance concerning his inability to access the law library on April 14, 2021. (*Id.*, PageID.10.) He avers that he wanted further access to move to reinstate the dismissed claims and to "prepare for [his] upcoming trial." (*Id.*, PageID.7.) As discussed above, Plaintiff was successful in having certain RLUIPA claims reinstated. Plaintiff also provides no facts regarding why he wished to access the law

library to prepare for his upcoming trial.  Furthermore, a review of the docket in *Orum v. Mich. Dep't of Corr.* indicates that prior to trial, Plaintiff was able to file numerous documents, including motions to issue writs of habeas corpus *ad testificandum* for his proposed witnesses, a motion for reconsideration, motions to clarify, a trial brief, and proposed *voir dire.  See generally Orum v. Mich. Dep't of Corr.*, No. 2:16-cv-109 (W.D. Mich.).  While Plaintiff was ultimately unsuccessful at the jury trial regarding his retaliation claims, he simply fails to allege facts from which the Court could infer that Defendants Loomis and Hitchingham impeded his right to access the courts.

The Constitution protects a prisoner's right of access to the courts, not to the prison library or a prisoner legal assistance program.  *See Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985); *see also Lewis*, 518 U.S. at 351 (discussing that a sub-par library or legal assistance program does not establish relevant actual injury).  As discussed above, Plaintiff cannot plausibly show that his right to access the courts was impeded by any alleged action taken by Plaintiff.  While Plaintiff desired more access to the law library, "[t]here is no constitutional right to any particular number of hours in the law library." *Thomas v. Campbell*, 12 F. App'x 295, 297 (6th Cir. 2001) (citing *Walker*, 771 F.2d at 932).  Moreover, Plaintiff has alleged no injury to his ability to access the courts. Plaintiff's First Amendment access to the courts claims will, therefore, be dismissed.

### 2.    Retaliation

Plaintiff contends that Defendants Loomis and Hitchingham retaliated against him, in violation of his First Amendment rights, by refusing to schedule him for additional law library time after Plaintiff submitted a grievance about his inability to access the law library on April 13, 2021.  (ECF No. 1, PageID.10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  Plaintiff explicitly states that he filed a grievance concerning his inability to access the law library on April 14, 2021; therefore, he has sufficiently alleged that he engaged in protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The Sixth Circuit has concluded that being denied access to the law library on one occasion is de minimis conduct that does not constitute adverse action. *See Meeks v. Schofield*, 625 F. App'x 697, 701–02 (6th Cir. 2015). In his complaint, Plaintiff suggests that at some time after Judge Quist initially adopted the R&R dismissing Plaintiff's claims, he sent a kite to Defendants Loomis and Hitchingham asking to be placed on the call out list so that he could "move to reinstate the claims that had been dismissed . . . and to prepare for [his] upcoming trial." (ECF No. 1, PageID.7.) Plaintiff submitted the required forms but alleges that Defendants Loomis and Hitchingham would not put him on the call out list for "any additional time" after he filed his grievance concerning April 14, 2021. (*Id.*, PageID.8.) While not explicitly clear from the complaint, it appears that Plaintiff's inability to access the law library was an ongoing issue. The Court, therefore, concludes that Plaintiff has sufficiently alleged adverse action for the purpose of his retaliation claims.

Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.  Here, Plaintiff merely alleges the ultimate fact of retaliation; however, he alleges no facts from which to reasonably infer that Defendants Loomis and Hitchingham's actions were motivated by his protected conduct.  Plaintiff's allegation rests entirely on a conclusory allegation of temporal proximity—that in response to his grievance concerning April 14, 2021, Defendants Loomis and Hitchingham refused to schedule him for additional law library time.  While temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.  *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020) (holding that allegations of temporal proximity were sufficient where the filing of a retaliatory misconduct by correctional officers occurred six days after the plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, although Plaintiff alleges that Defendants Loomis and Hitchingham failed to schedule him for additional law library time after he submitted a grievance concerning his inability to access the law library on April 14, 2021—suggesting temporal proximity—Plaintiff fails to allege any other facts to suggest that Defendants acted with a retaliatory motive. Indeed, Plaintiff's complaint avers that on April 21, 2021, two days after he filed his grievance, he was able to access the law library to prepare his objections to the R&R. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Accordingly, because Plaintiff fails to allege any facts to suggest that Defendants Loomis and Hitchingham's decision to not schedule him for

additional law library time was motivated by Plaintiff's protected conduct, Plaintiff fails to state First Amendment retaliation claims against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 22, 2022                             /s/ Phillip J. Green
                                                        PHILLIP J. GREEN
                                                        United States Magistrate Judge